Marian E. LOVELACE, Plaintiff–Appellant,

v.

Father Daniel C. KEOHANE, Individually, and as Agent and Employee of the Roman Catholic Archdiocese of Oklahoma City and the Roman Catholic Diocese of Tulsa; the Roman Catholic Archdiocese of Oklahoma City, and the Roman Catholic Diocese of Tulsa, Defendants–Appellees.

No. 74848.

Supreme Court of Oklahoma.

Feb. 11, 1992.

Rehearing Dismissed April 20, 1992.

---

Glenn R. Beustring & Associates, Gregory P. Williams, Tulsa, for plaintiff-appellant.

Covington & Poe, James E. Poe and Stephen R. Clouser, Tulsa, for defendant-appellee, Father Daniel C. Keohane.

Knight, Wagner, Stuart, Wilkerson & Lieber, Stephen C. Wilkerson, Tulsa, for defendants-appellees, Roman Catholic Archdiocese of Okla. City and the Roman Catholic Diocese of Tulsa.

DOOLIN, Justice.

The United States Court of Appeals for the Tenth Circuit has certified a two-part question of state law wherein the decisive issues are: 1) whether a "multiple personality disorder" (MPD) constitutes a legal disability thus tolling the statute of limitations in a personal injury action, and 2)

whether the discovery rule tolls the statute of limitations in an alleged clergical negligence case wherein the victim had no conscious knowledge of the incidents until psychotherapy triggered recollection of the sexual abuse? Under the factual allegations tendered for review in this case of first impression, we answer both questions in the negative.

## FACTUAL ALLEGATIONS

Plaintiff/appellant Marian E. Lovelace (Lovelace) was sexually abused by her biological father from the time she was an infant until she was approximately fourteen years old. As a result of the incestuous abuse and as a self-protecting measure, Lovelace developed a MPD, which was not diagnosed until 1980, when Lovelace was about 32 or 33 years old. During the odious periods of sexual abuse, Lovelace regressed into a "passive, trancelike state," and would become "childlike in nature." Lovelace's dominant "host" personality, "Marian," repressed all memory of the acts of abuse while she was a minor.

At about the age of 19, following her father's death in 1967, Lovelace's psychological repression broke down, and she sought counselling from Defendant-appellee Father Daniel C. Keohane, (Father Keohane), concerning the incestuous abuse committed by her deceased father. At this time of her life, "underlying sexual feelings towards boys were beginning to stir in Marian's conscious personality, [and] she felt guilty about these feelings and desires, because they were in conflict with her Roman Catholic faith and teachings of the Church." Additionally, Lovelace "had deep rooted confusion, anxieties and terrorizing fears about any sexual touching of her body."

During the next three years, from the fall of 1967 until late 1970, Lovelace alleged she was sexually seduced by Father Keohane during counseling sessions. Lovelace alleged that Father Keohane's sexual misconduct began with fondling and gradually proceeded to an illicit relationship. As a source of refuge, Lovelace retreated back into her 'childlike' sub-personalities during the incidents of sexual abuse by Father Keohane. Lovelace's dominant host personality would not remember or recall the incidents of sexual abuse.

Approximately one year after Father Keohane commenced his alleged sexual molestations of Lovelace, "some of her alter-personalities attempted to take her life on several occasions." As a result of her suicide attempts, Lovelace was hospitalized in a psychiatric ward for depression in 1968. During her hospitalization, Lovelace did not assume any of her childlike sub-personalities, nor did she reveal the incestuous abuse committed by her natural father.

Father Keohane continued his form of sexual therapy on Lovelace when she was released from her psychiatric treatment in May of 1969. Lovelace left Oklahoma in 1970, and eventually earned a Master's Degree with honors, and became a "highly respected social worker." However, during this ten year period, Lovelace continued to suffer from mild mental problems.

In 1980, Lovelace alleges that her "psychological stability began to disintegrate around her." She was "unable to work" and she underwent continuing psychotherapy. Lovelace contends that her dissociative disorder, MPD, was not diagnosed until 1980, because she or one of her sub-personalities did not trust her male therapist and feared that he would begin the same type of sexual abuse committed by Father Keohane.

Nevertheless, at that time, Lovelace asserts that she or one of her sub-personalities finally revealed the sexual abuse by her natural father during a therapy session. Seven years later, in April, 1987, a television news report, concerning a "psychiatrist who sexually molested a girl on the steps of a church," triggered another sub-personality to come forward with memory of the sexual advances committed by Father Keohane. During two videotaped psychotherapy sessions, held on May 18 through 19, 1987, Lovelace confirmed her knowledge of Father Keohane's abuse after she was told that the priest had admitted to the alleged sexual misconduct.

## PROCEDURAL DISPOSITION

Lovelace filed a complaint in the United States District Court for the Northern District of Oklahoma on May 17, 1988 under 28 U.S.C.A. § 1332 (1976), the diversity statute, seeking personal injury damages stemming from the clergical negligence of Father Keohane, and the two dioceses with which Father Keohane was affiliated during the alleged sexual misconduct: The Roman Catholic Archdiocese of Oklahoma City and The Roman Catholic Diocese of Tulsa. All defendants moved to dismiss Lovelace's suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants contended that, as a matter of law, Lovelace's action was clearly barred by Oklahoma's statute of limitations. 12 O.S. § 95 (1981). The statute provides in pertinent part:

> Civil action, other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
>
>   \*    \*    \*    \*    \*    \*
>
> Third. Within two (2) years: ...; an action for injury to the rights of another, not arising on contract,....

Lovelace argued that her underlying mental incapacity and/or memory loss tolled the statute of limitations. However, in opposing defendants' motions to dismiss, Lovelace did not offer any documentation or verified affidavits from any of her therapists concerning her alleged psychological condition, or her alleged repression of memories of the acts of incest or of sexual abuse by Father Keohane.

The federal district court began its analysis by observing that Lovelace's complaint, filed 20 years after the initial acts of alleged sexual abuse, was time-barred as a matter of law under Oklahoma jurisprudence. In its written order, the district court first opined that Lovelace did not suffer from a *"legal disability"* within the meaning of the tolling provisions of 12 O.S. § 96 (1981). This statute provides in pertinent part:

> If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed,....

Although the term, legal disability, had not been defined by this Supreme Court, the district court concluded that the nature of Lovelace's alleged condition did not rise to such a level, because Lovelace did not allege that she was unable to manage her business affairs or estate, or understand and comprehend the nature of her legal rights of liabilities. *Robertson v. Robertson,* 654 P.2d 600, 605–606 (Okla.1982), quoting from *Roberts v. Stith,* 383 P.2d 14, 18 (Okla.1963).

Alternatively, the district court first reasoned this Supreme Court would not invoke the discovery rule (see Discussion, Part b, *infra*) in this type of action which alleges memory loss resulting from psychological trauma. Upon reviewing relevant authority, the district court next observed "that the Supreme Court of Oklahoma has not yet adopted the discovery rule in a negligence action or one involving intentional infliction of emotional distress." Cf. *Sloan v. Canadian Valley Animal Clinic, Inc.,* 719 P.2d 474, 475 (Okla.Ct.App.1985) (discovery rule "should be adopted" in negligence actions.) The district court found the *Sloan* decision had "persuasive but not precedential value," because it was not approved for publication by this Court. Rule 1.200(C)(B), Rules of Appellate Procedure in Civil Cases, 12 O.S., Ch. 15, App. 2. See also, 20 O.S. § 30.5 (1971).

In addressing the sufficiency of Lovelace's complaint, and her two-part argument as to legal disability and discovery of her injury the district court concluded this "two-stage speculation is too tenuous a foundation upon which to permit the presentation of a twenty-year old claim." The district court supplemented its order by observing that:

> Neither party has asked this Court to certify the question to the Supreme Court of Oklahoma. Such a decision is

discretionary with this Court, and certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988). Under the circumstances, this Court will not certify the question.

Accordingly, the federal district court granted the motions of the defendants to dismiss Lovelace's complaint as time-barred under Oklahoma Law. Lovelace appealed to the Tenth Circuit Court of Appeals. The federal appellate court, "mindful of principles of comity and federalism," certified the issues to this Supreme Court. In resolving this certification, we must, as did the district court, accept the factual allegations, including Father Keohane's admission, pleaded in Lovelace's complaint as true. *Walker v. Pacific Basin Trading Co.*, 536 F.2d 344, 346 (10th Cir.1976) (well-pleaded facts subjected to a sufficiency challenge under Rule 12(b)(6) accepted as true); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989) (same).

## DISCUSSION

On appeal to the Tenth Circuit Court of Appeals, Lovelace argued that her cause of action in negligence against Father Keohane did not accrue until May, 1987. She contends she did not know she had been *"injured,"* and that Father Keohane's sexual molestations had *"caused"* her injury. She alleges she was not aware of the existence or nature of her psychological injuries, that is, the existence of at least ten sub-personalities, until after Father Keohane made his admissions in May, 1987.

■ We find no support for Lovelace's argument that her cause of action accrued upon Father Keohane's admission. Father Keohane's confession has no bearing on the accrual of Lovelace's cause of action. The limitations period applicable to Lovelace's professional negligence action is two years. Contrary to Lovelace's position, her *actual awareness* of all her injuries does not exempt her negligence claim from the running of the statute of limitations. For at

the end of each alleged sexual encounter with Father Keohane, Lovelace, then an adult person, was allegedly harmed, and thus she had a mature and vested cause of action resulting from each of Father Keohane's negligent acts. Unless an exception can be applied, the statute of limitations barred Lovelace's action in late 1972.

In the present case, as we observed in *Reynolds v. Porter*, 760 P.2d 816, 821 (Okla.1988), the injury occurred:

> ... contemporaneously with the negligent act. [T]he statutory time begins to run when damage or harm occurs as a result of negligent act. At that point *a cause of action arises* in favor of one who was harmed *regardless of whether one knows of the injury or is unaware of its occurrence.* (emphasis added.)

Strictly speaking, like the medical malpractice plaintiff in *Reynolds*, 760 P.2d at 821, Lovelace's "right to bring an action arose at that time even though she was then unaware of the harm she suffered." As one of our appellate courts stated in *Moore v. Delivery Services, Inc.*, 618 P.2d 408, 409 (Okla.Ct.App.1980):

> Mere ignorance of the existence of a cause of action constituting such on the part of a person in whom a cause of action lies will not toll the running of the statute of limitations. This rule applies unless a statute specifically provides that the limitations do not begin to run until the person in whom the cause of action lies has actual knowledge of it, or unless there has been fraudulent concealment of the cause of action on the part of the person against whom it lies.

Likewise, we are not concerned with the origin of Lovelace's mental condition. The allegations of the petition leave no doubt that Father Keohane's wrongful conduct *did not actually cause* Lovelace's MPD. Lovelace was not prevented, except by her own mental condition from discovering the true cause and aggravation of her mental disorder.

In her amended complaint, Lovelace affirmatively alleged that her personality disorder arose independently of any fault on

the part of Father Keohane. Correctly stated, the gravamen of Lovelace's petition is that Father Keohane's wrongful conduct *aggravated* her pre-existing disorder. There is no allegation that Father Keohane concealed any information, or had otherwise fraudulently prevented Lovelace from seeking psychiatric therapy or from filing her suit within the limitations period.

#### a. Legal Disability

■ The first certified issue is whether Lovelace was under a "continuous" legal disability from 1970 until 1980 or until April, 1987.

What the learned Federal Jurist meant by question No. 1 is: If under the affliction of MPD plaintiff lacks legal capacity, is its determination a question of fact or of law?

The pleadings and allegations presented by the Federal Court indicate that plaintiff, after terminating her treatment under Father Keohane, completed a college education program and managed her own affairs. No matter how the psychological term or description is couched, plaintiff is not under legal disability if able to conduct her business affairs for a number of years.

Although we agree with the district court's conclusion that § 96 is not applicable under the facts of this case, we observe another route to the same conclusion. For the reasons set forth below, we hold that under the tendered facts, Lovelace's complaint of clergical negligence was filed too late. Therefore, the statute of limitations has run on her claim.

#### b. Discovery Rule

■ The remaining question before us is whether the factual allegations of Lovelace's complaint are sufficient to invoke the discovery rule. The discovery rule tolls the statute of limitations until an injured party knows of, or *in the exercise of reasonable diligence,* should have known of or discovered the injury, and resulting cause of action. (Emphasis added). *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915, 920 n. 1 (Okla.1989), quoting from *Reynolds v. Porter,* 760 P.2d 816, 820 n. 8 (Okla.1988). This Court has extended the discovery rule to certain tort cases, and actions involving medical malpractice. *See e.g., McDonald v. Time–DC, Inc.,* 773 P.2d 1252, 1255 n. 12 (Okla.1989). However, we have not applied the discovery rule in a broad range of negligence actions. Thus, whether the discovery rule should apply to professional negligence actions is a judicial determination which must be made on a case by case basis.

In *Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226 (1986), the Washington Supreme Court, En Banc, addressed a similar question upon certification from a federal district court. The *Tyson* court held that the discovery rule does not "apply to intentional torts where the victim has blocked the incident from her conscious memory during the entire time of the statute of limitations." *Tyson,* 727 P.2d at 227. The court refused to apply the discovery rule to sexual abuse cases by 1) emphasizing the lack of empirical, objective, and verifiable evidence of the wrongful act and physical injury when compared with medical malpractice cases where the court applied the discovery rule, and 2) casting questionable doubt upon the expertise and reliability of testimony from mental health professionals. The court concluded that the "discovery rule should be adopted only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action." *Tyson,* 727 P.2d at 228.

Although the *Tyson* holding was superseded by statute, Wash.Rev.Code § 4.16 (1988), all defendants here place great reliance upon the policy considerations made by the court in that opinion. Lovelace distinguishes *Tyson* by emphasizing that in a videotaped session, Father Keohane admitted to having had an illicit sexual relationship with her. Lovelace reasons that Father Keohane's admissions cure the statute of limitations concerns which perturbed the majority in *Tyson.* There is allegedly corroboration that the incidents of sexual abuse actually occurred; however, the problem in the instant case is that the factual circumstances do not justify application of the discovery rule.

Under the discovery rule, an essential prerequisite to its application is the plaintiff's lack of awareness in recognizing the cause and extent of emotional harm. In this case, the allegations of Lovelace's complaint show that she cannot satisfy the minimum requirement to invoke the discovery rule. The rule does not apply when "(a) plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence." *Daugherty v. Farmers Cooperative Ass'n.*, 689 P.2d 947, 951 (Okla.1984). In *Daugherty*, 689 P.2d at 950–951, we further observed that:

> Properly limited, ⌐ discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations. This rule obtains because a reasonably prudent person is required to pursue his claim with diligence. Statutes of limitations were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts.
>
> \*   \*   \*   \*   \*   \*
>
> 'For the purposes of the statute of limitations, if the means of knowledge exist and the circumstances are such as to put a reasonable man upon inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry and the limitation on the general rule often expressed in the statute is that plaintiff cannot successfully ... [set up a bar to the running of the statute] if his failure to discover it is attributable to his own negligence.' (citations omitted).

We are reluctant to apply the discovery rule under the facts of this case. The amended complaint filed by Lovelace sets out a presentation of facts concerning her mental state and awareness prior to the alleged sexual molestations made by Father Keohane, including her subsequent suicidal behavior, and her mental state following the illicit sexual relationship. Although we consider all material facts properly pleaded as true, we are of the opinion that Lovelace is not entitled to invocation of the discovery rule. The factual information does not justify a contrary conclusion.

In her complaint, Lovelace acknowledges that upon attaining her majority, she was well aware of the acts of incestuous abuse and resultant emotional harm caused by her biological father. Lovelace also admits that prior to Father Keohane's sexual abuses, she was actually aware of the Catholic teachings, and "believed that any sexual touching outside of marriage was a mortal sin, and would lead to eternal damnation of her soul." The allegations of Lovelace's complaint contradict her assertion that she was "blamelessly ignorant," had suppressed all awareness of her childhood sexual abuse, and had no knowledge of her psychological problems concerning sexual relationships. There is no allegation that Lovelace somehow repressed this information from her conscious and dominant personality. We conclude that Lovelace was aware that her mental functioning was disturbed.

Although Lovelace alleges that she was unaware of Father Keohane's sexual wrongdoing at the time of abuse, she concedes that she later experienced emotional and physical harm when her sub-personalities attempted suicide. Lovelace knew not why she attempted suicide; however, she is chargeable with knowledge of her amnestic period when she was diagnosed as suffering from psychological depression in late 1968. Lovelace may have blocked out memory of the cause of her then existing and aggravated injury; but, as a matter of law, she is also chargeable with knowledge of the fact that she was in some way injured, for she had "deep rooted confusion, anxieties and terrorizing fears." Lovelace knew or reasonably should have known that she had been harmed.

Even when she left Oklahoma in 1970, Lovelace admits that she was aware that her mental functioning was disturbed. However, during the next 11 years, Lovelace does not allege that she "diligently" sought any psychological treatment of psychiatric therapy between her release from

hospitalization in 1969, and the disintegration of psychological stability in 1980. Lovelace may not have known what was in fact the cause of the harm, but she had an obligation and reasonable opportunity to discover with due diligence the actual cause and aggravation of the harm inflicted upon her.

In her brief before the federal appellate court, Lovelace presented scholarly articles and books about incestuous sexual abuse and mental disorders. Lovelace extensively discusses the psychological, mental, and familial pressures concerning childhood sexual trauma. Lovelace also explains the development of dissociative disorders, and the onset of MPD as it relates to childhood sexual abuse. For example, a MPD is characterized by:

> the existence within the person of two or more distinct personalities or personality states. Personality is here defined as a relatively enduring pattern of perceiving, relating to, and thinking about the environment and one's self that is exhibited in a wide range of important social and personal contexts. Personality states differ only in that the pattern is not exhibited in as wide a range of contexts. In classic cases, there are at least two fully developed personalities; in other cases, there may be only one distinct personality and one or more personality states. In classic cases, the personalities and personality states each have unique memories, behavior patterns, and social relationships; in other cases, there may be varying degrees of sharing of memories and commonalities in behavior or social relationships.... At lease two of the personalities, at some time and recurrently, take full control of the person's behavior. The transition from one personality to another is usually sudden (within seconds to minutes), but, rarely, may be gradual (over hours and days).... A transition may also be elicited by hypnosis or an amobarbital interview. Often personalities are aware of some or all of the others to varying degrees, and some may experience the others as friends, companions, or adversaries. Some personalities may be aware

of the existence of other personalities, but not have any direct interaction with them. Some may be unaware of the existence of the other.... One or more of the personalities may function with a reasonable degree of adaption (e.g., be gainfully employed) while alternating with another personality that is clearly dysfunctional or appears to have a specific mental disorder.... Each personality displays behaviors characteristic of its sense of its stated age.

American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders § 300.14, at 269–70 (3d ed. rev. 1987) (DSM–III–R). We do not question the validity of the legal and psychiatric literature cited by Lovelace, nor do we formulate any specific rule governing the application of the discovery rule to sexual abuse cases. However, we note that in sexual abuse cases wherein the court applied the discovery rule, the plaintiff's claim of psychological repression was not supported by literature, such as DSM–III–R, but corroborated by an affidavit from at least one treating psychological or psychiatric mental health therapist or expert. See e.g., *Johnson v. Johnson*, 701 F.Supp. 1363, 1365 (N.D.Ill.1988), *Meiers–Post v. Schafer*, 170 Mich.App. 174, 427 N.W.2d 606, 607–608 (1988), and *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 24 (1987).

■ We do not mean that expert testimony from a treating psychotherapist would actually validate a plaintiff's claim of past sexual abuse. But, such expert testimony by a mental health professional would aid the trier of law in determining whether the plaintiff is entitled to invoke the discovery rule. Yet even if Lovelace had presented testimony from her treating psychotherapist, we agree the district court correctly predicted that this Court would not apply the discovery rule under the particular facts of this case.

In our mind, the deciding factor in this case is that the means of knowledge in the psychiatric field existed so as to reveal the symptoms of Lovelace's mental disorder. Lovelace's mental disorder was not inherently unknowable. For example, in A.P.A.,

DSM–II, § 300–14 (1968), the principal manifestations of MPD were sufficiently developed and recognized to allow diagnosis of, and support a connection between Lovelace's incestuous abuse, her deeply ingrained sexual anxiety and suicidal behavior, and the symptoms of amnesia with her development of a MPD. See also, World Health Organization, Manual of International Classification of Diseases, Injuries, and Causes of Death (8th ed. 1968). In short, a MPD was reasonably knowable and discoverable had Lovelace alleged that she *diligently* sought effective psychiatric therapy prior to the disintegration of her psychological stability in 1980.

## CONCLUSION

Upon consideration of the policies behind statutes of limitations in general, such as weighing the desire to prevent stale claims against the unfairness of precluding potentially valid claims, including the defendant's right of repose, and the discovery rule as properly limited, we are persuaded that the district court correctly predicted that this Court would not extend the discovery rule under the facts as alleged in Lovelace's complaint.

CERTIFIED QUESTION ANSWERED NEGATIVELY.

OPALA, C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

SUMMERS, J., concurs in part; dissents in part.

HODGES, V.C.J., and KAUGER and ALMA WILSON, JJ., dissent.

HODGES, Vice Chief Justice, with whom ALMA WILSON and KAUGER, JJ. join, dissenting.

Today, the majority of this Court has held that a sexual abuse victim's multiple personality disorder (MPD) had no effect on her ability to bring a clergy malpractice action within the two-year limitation period. Thus, the majority refuses to apply the discovery rule. I must dissent.

## I.

The issue of when Lovelace discovered or should have discovered her injury and its cause presents a question for the trier of fact. "[T]he question of whether an action is barred by the statute of limitations in any particular case is one of fact where the facts are in dispute." *Barrington v. Hembree*, 193 Okla. 340, 341, 143 P.2d 614, 616 (1943). The fact question disputed in this matter is when Lovelace acquired "sufficient information which, if pursued, would lead to the true condition of things ... to start the running of the statute of limitations." *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947 (Okla.1984).

The majority holds that Lovelace was "chargeable with the knowledge of the fact she was in some way injured" when she was diagnosed with "depression" in 1969. It reasons that the deciding factor is that MPD was not "inherently unknowable" at that time. However, the proper focus should have been on whether Lovelace knew, or should have known under the circumstances, of her injury and its cause. She alleges that it took years of psychotherapy combined with the priest's confession to bring the memories of sexual abuse to her conscious mind.

This case is not unlike a medical malpractice action in which a piece of surgical equipment was negligently left in a patient. In such a case, this Court has applied the discovery rule despite the fact that the means to discover the misplaced item were readily at hand and despite the fact that the patient experienced painful symptoms long before the item was discovered. *See Seitz v. Jones*, 370 P.2d 300 (Okla.1961). In the present case, Lovelace should not be charged with knowledge of her injury and its cause merely because MPD may have been discoverable in the late 1960's.

This case was before a federal district court on a motion to dismiss for failure to state a claim upon which relief could be granted. For purposes of such a motion, all facts stated in the complaint must be accepted as true and a plaintiff receives the benefit of all inferences from those facts. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th

Cir.1987). The case should be dismissed only if a plaintiff can prove *no set of facts* which would provide relief. *Id.*

Lovelace set out sufficient facts to state a cause of action. She should have been allowed to present evidence to the trier of fact concerning when she knew or should have known of the priest's sexual abuse and its injurious effect.

## II.

The majority's holding is inconsistent with the policy considerations behind application of the discovery rule. The majority notes the Washington Supreme Court's conclusion that the "discovery rule should be adopted only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action." *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226, 228 (1986). However, it fails to realize that the policy considerations articulated in *Tyson* weigh in favor of applying the discovery rule to this case.

In *Tyson*, the plaintiff alleged that her father had sexually assaulted her from the time she was three years old until age eleven. She further alleged that the sexual assaults caused her to repress any memory of the acts until she entered psychotherapy fifteen years later. Through therapy, she claimed to remember the alleged acts and filed her complaint within one year.

The *Tyson* court noted that the purpose of statutes of limitation are to avoid the evidentiary problems inherent in stale claims. *Id.* 727 P.2d at 227. It reviewed cases in which it had applied the discovery rule and observed:

> Because of the availability and trustworthiness of objective, verifiable evidence in the above cases, the claims were neither speculative nor incapable of proof. Since the evidentiary problems which the statute of limitations is designed to prevent did not exist or were reduced, it was reasonable to extend the period for bringing the actions.

*Id.* at 228.

The proposed evidence in *Tyson*, however, consisted solely of testimony from the plaintiff, family and friends, school teachers, and treating psychologists. After describing psychology as an imprecise discipline, the court reasoned:

> It is proper to apply the discovery rule in cases where the objective nature of the evidence makes it substantially certain that the facts can be fairly determined even though considerable time has passed since the alleged events occurred. Such circumstances simply do not exist where a plaintiff brings an action based solely on an alleged recollection of events which were repressed from her consciousness and there is no means of independently verifying her allegations in whole or in part.

*Id.* at 229. Thus, the "subjectivity" of Tyson's claim persuaded five of the nine justices to refuse to apply the discovery rule. In response, the Washington Legislature amended its statute of limitations to provide a person in Tyson's situation the benefit of the rule.

Lovelace, however, is not relying solely on her recollection of previously repressed events. She claims to have a taped admission from the priest in which he relates the sexual abuse. Yet, the majority refuses to apply the discovery rule despite the presence of objective verifiable evidence that minimizes the risk that her claim is stale. The trier of fact should be allowed to hear evidence of her claim along with evidence concerning her knowledge of the injury and its cause.

The set of facts Lovelace alleges would clearly satisfy the *Tyson* court's "objective verifiable evidence" test. These facts would also satisfy the two-prong test developed in *Meiers–Post v. Schafer*, 170 Mich. App. 174, 427 N.W.2d 606 (1988). The *Schafer* court held that a sexual abuse victim could bring an action after the time allowed by the statute of limitations if she could prove to the trier of fact that: (1) she had psychologically repressed the memory of the facts upon which the claim was predicated; and (2) there was corroborating evidence that the sexual abuse actually occurred. *Id.* 427 N.W.2d at 610. This test seems to strike a fair balance between the

risk of stale claims and the unfairness of precluding justifiable causes of action.

When asked, most courts have allowed victims of sexual abuse the benefit of the discovery rule if they have repressed the memory of the traumatic events. *Nicolette v. Carey*, 751 F.Supp. 695 (W.D.Mich. 1990) (applying Michigan law); *Johnson v. Johnson*, 701 F.Supp. 1363 (N.D.Ill.1988) (applying Illinois law); *Evans v. Eckelman*, 216 Cal.App.3d 1609, 265 Cal.Rptr. 605 (1990); *Mary D. v. John D.*, 216 Cal. App.3d 285, 264 Cal.Rptr. 633 (1989); *Snyder v. Boy Scouts of America, Inc.*, 205 Cal.App.3d 1318, 253 Cal.Rptr. 156 (1988); *DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal.Rptr. 368 (1987); *Callahan v. State*, 464 N.W.2d 268 (Iowa 1990); *Schafer*, 427 N.W.2d 606; *E.W. v. D.C.H.*, 231 Mont. 481, 754 P.2d 817 (1988); *Osland v. Osland*, 442 N.W.2d 907 (N.D.1989); *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226 (1986) (rule applies when "objective verifiable evidence" is present); *Kaiser v. Milliman*, 50 Wash.App. 235, 747 P.2d 1130 (1987); *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23 (App.1987). *But see Baily v. Lewis*, 763 F.Supp. 802 (E.D.Pa. 1991) (applying Pennsylvania law); *Lindabury v. Lindabury*, 552 So.2d 1117 (Fla. Dist.Ct.App.1989); *Whatcott v. Whatcott*, 790 P.2d 578 (Utah App.1990). *See also Petersen v. Bruen*, 106 Nev. 271, 792 P.2d 18 (1990) (plaintiff's claim is not barred if there is clear and convincing evidence of sexual abuse by named defendant). The policy considerations underlying the discovery rule should compel the same result for Lovelace.

Perhaps what is most disturbing about today's majority pronouncement is its apparent refusal to recognize MPD and other conditions involving repression of the memory of severely traumatic events. If the facts are as Lovelace alleges, this case is one of the strongest imaginable in terms of documentation of the abuse that occurred. By refusing to apply the discovery rule to such a compelling set of facts, the majority forecloses the opportunity for most victims of sexual abuse to pursue a legal remedy if they have repressed the memory of the traumatic events. Lovelace should have been allowed to present her evidence to the trier of fact.