Barry WEATHERS and Ann Weathers, individually and as husband and wife, Appellants,

v.

Lawrence B. FULGENZI, Ph.D., Olen Dale Maxwell, M.D., Stillwater Psychiatric Clinic, and Does 1 through 5, Appellees.

No. 75332.

Supreme Court of Oklahoma.

Nov. 1, 1994.

Joseph F. Bufogle, Bufogle & Associates, Tulsa, Donald S. Anderson, Derek S. Casey, Michaud, Hutton & Bradshaw, Wichita, KS, for appellants.

Cheryl A. Ramsey, Szlichta, Ramsey & Meyers, Stillwater, for appellee, Lawrence B. Fulgenzi.

Richard Dan Wagner, Wagner, Stuart & Cannon, Tulsa, for appellee, Stillwater Psychiatric Clinic.

SIMMS, Justice:

Appeal from the district court's order granting summary judgment to defen-dant/appellees, Lawrence B. Fulgenzi, Ph.D., and Stillwater Psychiatric Clinic (the Clinic), in a professional negligence action brought by plaintiffs Barry and Ann Weathers (here-inafter referred to as the Appellants collec-tively and Barry or Ann individually). Sum-mary judgment was granted on the grounds that the statute of limitations had run on the Appellants' cause of action. The Court of Appeals held a controversy of material fact existed in regards to when the action accrued and reversed the trial court's order.

Certiorari was granted to consider the ap-plication of the discovery rule and the effect of our recent pronouncement, *Lovelace v. Keohane*, 831 P.2d 624 (Okla.1992), in this case.[1] Because we find the district court did not err in its application of the discovery rule, the opinion of the Court of Appeals is vacated and the order of the district court is affirmed. The facts follow.

As a result of being raped, Ann, a regis-tered nurse, began suffering from the effects of what was later diagnosed as post traumat-ic stress disorder. Two years after the rape, she sought counseling at the Clinic in order to get treatment for depression and anxiety, common effects of the disorder. After an initial consultation with Dr. Maxwell, a psy-chiatrist and owner of the Clinic, Ann was referred to Fulgenzi, a licensed psychologist and then employee of the Clinic, for treat-ment. Fulgenzi treated Ann on a regular basis from May, 1981, to October, 1983. Ann alleges that sometime during this period, she and Fulgenzi developed an attraction for one another which led to acts of sexual play and eventually one incident of sexual intercourse in the Fall of 1983. She said that she was in love with Fulgenzi and thought he was in love with her. Fulgenzi admits that some of his actions towards Ann were inappropriate but denies they ever had sexual intercourse.

Within a week of the one incident, Ann mentioned it to a close friend who worked as a psychological technician on a mental ward in a Stillwater hospital. The friend advised Ann of the wrongfulness of the occurrence

---

1. We are only here concerned with the petition for certiorari of Stillwater Psychiatric Clinic be-cause defendant, Olen Dale Maxwell, M.D., was dismissed by the Weathers early in the litigation and the petition for certiorari of Fulgenzi was dismissed by this Court because it was not timely filed.

and admonished her to stop seeing Fulgenzi. Apparently, Ann followed this advice as the personal and professional relationship between her and Fulgenzi ended "right after" the incident.

Shortly thereafter, Ann attempted to commit suicide. Therapists noted several years later that the earlier rape was one factor in the cause of Ann's depression and resulting suicide attempt. They also opined that the attempt was a result of Ann blaming herself for the course of events and being "devastated" by the termination of the relationship with Fulgenzi.

After the suicide attempt, Ann began seeing Dr. Maxwell again, and continued·seeing him for approximately six months to one year. There was some question as to whether Ann mentioned the incident with Fulgenzi to Dr. Maxwell, yet the Appellants concede in their brief that no evidence on the issue was presented. After a short period of treatment with Dr. Maxwell, Ann quit seeing him. Dr. Maxwell eventually closed the Clinic, destroyed all of his records, and moved out of Oklahoma.

After three years without any treatment, Ann began seeing Claudia Holdman, a psychologist, on April 9, 1987. Holdman speculated that Ann's lack of treatment was because she had become very busy and "her mind was on other issues during that period of time which kind of distracted her from thinking about it." Holdman also agreed that Ann probably decided that the matter of the sexual encounter was between her and Fulgenzi and it would be best to "bury it."

On her first day with Holdman, Ann revealed the relationship with Fulgenzi and the circumstances surrounding the termination of it. Apparently the first person she told about the misconduct, besides her friend who insisted she quit seeing Fulgenzi, was Holdman. Ann told Holdman that Barry was unaware of what happened with Fulgenzi and was "very adamant" that he not find out. Barry did not become aware of the incident until March of 1989, almost two years later, when Ann was hospitalized. The following month the Appellants filed this action. In response, the defendants filed motions to dismiss. After much evidentiary material was

filed, the trial court treated the motions as ones for summary judgment.

 Summary judgment is appropriate only where it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Co.,* 687 P.2d 116 (Okla.1984); *Daugherty v. Farmers Coop. Ass'n,* 689 P.2d 947 (Okla.1984). On review, all inferences and conclusions to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *Daugherty, supra; Redwine v. Baptist Medical Center of Oklahoma, Inc.,* 679 P.2d 1293 (Okla.1983).

The trial court granted summary judgment on the grounds that the statute of limitations had run on the Appellants' action. The trial court found that the applicable statute of limitations was 12 O.S.1981, § 95, which provides, in pertinent part:

> "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
>
> * * * * * *
>
> Third. Within two (2) years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The trial court also concluded that this statute of limitation was not tolled by the discovery rule.

 Typically, a cause of action arises and the statute of limitations begins to run on that cause of action when harm occurs to the plaintiff whether the plaintiff knew of the injury or not. *Reynolds v. Porter,* 760 P.2d 816 (Okla.1988). However, the discovery rule takes into consideration that under some circumstances such as medical malpractice, a

plaintiff may not know that they were injured for some time after the statute of limitations has already run. Hence, the discovery rule "tolls the statute of limitations until an injured party knows of, or *in the exercise of reasonable diligence,* should have known of or discovered the injury, and resulting cause of action." *Lovelace,* 831 P.2d at 629 (Emphasis in original).

■ In other words, under the discovery rule, the two-year statute of limitations is tolled until such time as a reasonable person under the circumstances of the case would have discovered the injury and resulting cause of action. Consequently, the rule does not apply to a plaintiff who was aware of a wrong done to them. We explained in *Daugherty v. Farmers Cooperative Ass'n,* 689 P.2d 947, 950–51 (Okla.1984):

> "Properly limited, a discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations.... *This rule obtains because a reasonably prudent person is required to pursue his claim with diligence.*
>
> \* \* \* \* \* \*
>
> 'For the purposes of the statute of limitations, if the means of knowledge exist and the circumstances are such as to put a reasonable [person] upon inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry and the limitation on the general rule often expressed in the statute is that plaintiff cannot successfully ... [set up a bar to the running of the statute] if his failure to discover is attributable to his own negligence.'" (quoting *Kansas City Life Ins. v. Nipper,* 174 Okla. 634, 51 P.2d 741 (1935) (Emphasis added) (Citations omitted). *See also Lovelace,* 831 P.2d at 630 (quoting *Daugherty* ).

We note that there may be some question as to whether the proper statute of limitation in this action is 76 O.S.1981, § 18,[2] rather than 12 O.S.1981, § 95. We need not determine whether § 18 or § 95 applies herein because the same result will occur under either statute.

■ *Lovelace* involved the question of whether a plaintiff's multiple personality disorder constituted a legal disability so as to toll the statute of limitations in an action brought against a priest who was counseling the plaintiff. The evidence indicated the plaintiff in *Lovelace* was not under a legal disability which kept her from discovering the injury and resulting cause of action. In other words, with reasonable diligence, the plaintiff could have sought professional help which could have helped her determine the cause of her injury. Having failed to seek such help, we concluded the plaintiff's action was barred by the statute of limitations. In *Lovelace,* the Court explained that:

> "[u]nder the discovery rule, an essential prerequisite to its application is the plaintiff's lack of awareness in recognizing the cause and extent of emotional harm. In this case, the allegations of Lovelace's complaint show that she cannot satisfy the minimum requirement to invoke the discovery rule. The rule does not apply when '(a) plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence.'" 831 P.2d at 630 (quoting *Daugherty v. Farmers Coop. Ass'n,* 689 P.2d 947, 951 (Okla.1984).

It is important to note the instant case is not one of repressed memory in which the victim represses the memory of the instances of abuse in order to cope with the mental trauma resulting from that abuse. In those cases, such as occurred in *Lovelace,* memory of the abuse is triggered by something that occurs later in life. However, in the case at

**2.** Title 76 O.S.1981, § 18 provides:
 "An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; ... provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation."

bar, *Ann was aware of the alleged sexual encounter.* In fact, when confronted about the wrongfulness of Fulgenzi's actions, Ann insisted that "she did not want to hurt [Fulgenzi]" by bringing some action against him. The Appellants do not even argue that she repressed the memory of the incident, but assert only Ann was unable to comprehend that she was injured by the misconduct of Fulgenzi until later when Holdman got through to her. Resulting psychological harm is not the question before us here. We are concerned only with questions concerning the statute of limitations.

Under the facts of this case, we cannot apply the discovery rule. Just as in *Lovelace,* we are reluctant to apply the discovery rule under the facts of this case. Although Ann was hospitalized for some period of time due to depression, anxiety, and suicidal ideations after she quit seeing Fulgenzi, she was able to work as a registered nurse and taught nursing classes at a vocational-technical school during that time as well. Such evidence shows Ann was capable, at least for part of the time, to think clearly about the events that had transpired.

Other evidence indicated Ann was capable of discerning the wrongfulness of Fulgenzi's act. For instance, therapists opined that Ann's depression and anxiety were caused by her placing the blame upon herself for the incident that had occurred with Fulgenzi. *Holdman noted that in order for Ann to blame herself or "assign responsibility" to herself for such, she would first have to know that what happened was wrong.* It is undisputed that a friend told her within a week of the incident that it was wrong. Ann cannot claim to be unaware of the impropriety of the incident back in 1983. In fact, she quit seeing Fulgenzi immediately after the incident occurred.

In addition, Ann was referred to Dr. Joseph Madrid, a psychiatrist at a crisis center where Ann was hospitalized in 1989. Dr. Madrid noted that Ann remembered what happened with Fulgenzi in great detail. He further stated that he would have no reason to doubt her ability to understand that what happened with Fulgenzi was wrong when she was told such by her friend shortly after it occurred. He explained that she would have understood because she was a high-functioning intelligent person who worked as a registered nurse. Consequently, under *Lovelace,* the discovery rule did not toll the statute of limitations in this case.

■ The Appellants assert that because they presented affidavits to the trial court supporting their argument that Ann was incompetent to know that Fulgenzi's alleged actions injured her, their case is distinguishable from *Lovelace.* They place much emphasis upon language in *Lovelace* which states:

> "However, we note that in sexual abuse cases wherein the court applied the discovery rule, the plaintiff's claim of psychological repression was not supported by literature, such as DSM–III–R,[3] but corroborated by an affidavit from at least one treating psychological or psychiatric mental health therapist or expert. See e.g., *Johnson v. Johnson,* 701 F.Supp. 1363, 1365 (N.D.Ill.1988), *Meiers–Post v. Schafer,* 170 Mich.App. 174, 427 N.W.2d 606, 607–608 (1988), and *Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 24 (1987)." 831 P.2d at 631.

In each of the cited cases, the court had before it evidence (affidavits from treating therapists, psychologists or psychiatrists) which indicated that the sexual abuse caused the plaintiff to either repress her memory or be incapable of realizing the harmful effect of such abuse upon the plaintiff. The Appellants claim that because they presented similar evidence to the trial court below, *Lovelace* is distinguishable and summary judgment was improper. They fail, however, to consider all of the *Lovelace* holding.

Following the above-quoted language from *Lovelace,* we held as follows:

> "We do not mean that expert testimony from a treating psychotherapist would actually validate a plaintiff's claim of past

---

**3.** DSM–III–R is an acronym for the "Diagnostic and Statistical Manual for Mental Disorders (3d ed. rev. 1987)" published by the American Psychiatric Association. It is a compilation of definitions/criteria of mental disorders used by professional counselors to diagnose patients.

sexual abuse. But, *such expert testimony by a mental health professional would aid the trier of law in determining whether the plaintiff is entitled to invoke the discovery rule.* Yet even if Lovelace had presented testimony from her treating psychotherapist, we agree the district court correctly predicted that this Court would not apply the discovery rule under the particular facts of this case.

In our mind, the deciding factor in this case is that the means of knowledge in the psychiatric field existed so as to reveal the symptoms of Lovelace's mental disorder. Lovelace's mental disorder was not inherently unknowable." 831 P.2d at 631 (Emphasis added).

Consequently, affidavits and testimony from expert witnesses do not automatically create a question for the jury to hear. Rather, such evidence may be used by the trier of law, to determine whether the statute of limitations was tolled by the discovery rule. In this case, the district court had the evidence before it when it concluded "both plaintiffs, with the exercise of reasonable diligence would have discovered that the alleged conduct of Fulgenzi toward Ann Weathers was improper or injurious." We are convinced the trial court did not err in so holding.

The Appellants also contend the trial court erred in considering evidence regarding the friend who advised Ann to discontinue seeing Fulgenzi after the incident. Although the friend and his advice were mentioned in depositions of therapists, the evidence was documented in detail in an investigative report presented to the Oklahoma State Board of Examiners of Psychologists in response to a complaint filed against Fulgenzi by Ann. Counsel for the parties mentioned the report and statements made therein in their briefs and in argument. The Appellants claim the evidence should not have been considered because it was neither deposition testimony, affidavit nor any other sworn statement and was inadmissible as hearsay evidence. However, no objection to the evidence appears in the record. Hence, they have waived their objection. *Bauman v. International Harvester Co.*, 191 Okla. 392, 130 P.2d 287 (1942). Moreover, the Appellants have filed the investigative report in a motion to this Court asking for us to consider it as evidence on appeal.

The Appellants further argue the doctors and the clinic concealed information from them and such concealment tolls the statute of limitations. They base their argument on the fact that when Dr. Maxwell closed the Clinic and moved out of state he destroyed all of the records of the Clinic. There is no evidence to indicate that such was done in order to conceal the incident with Fulgenzi. Rather, the evidence suggests Dr. Maxwell's actions were merely those of a prudent therapist wishing to assure the notes and records kept on his former clients would always remain confidential. The clearest instance of concealment in this case was Ann hiding the incident with Fulgenzi from Barry for many years. Furthermore, the Appellants voluntarily dismissed Dr. Maxwell from the case early in the litigation.

Having considered the evidence and arguments presented to the trial court in the light most favorable to the Appellants, we find the trial court did not err in granting summary judgment to the defendants in this case. The Appellants knew of the injury resulting from the actions of Fulgenzi. The statute of limitations was not tolled by the discovery rule, and this action is barred by the statute of limitations as found by the trial court.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED and the judgment of the district court is AFFIRMED.

LAVENDER, V.C.J., and HARGRAVE, OPALA, KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, C.J., and ALMA WILSON, J., dissent.