88 So.2d 880

**Luther (Loyd) HILL**

v.

**STATE.**

**7 Div. 347.**

Court of Appeals of Alabama.

Jan. 17, 1956.

Rehearing Denied Feb. 7, 1956.

Scott, Dawson & Scott, Fort Payne, for appellant.

John Patterson, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., for the State.

PRICE, Judge.

The appellant was tried, convicted and fined $50.00 in the County Court of DeKalb County under an affidavit or complaint, sworn to on June 16, 1954, charging that within twelve months before the making thereof appellant did display, handle, exhibit or use a poisonous or dangerous snake or reptile in such a manner as to endanger the life and health of Mina Ruth Turner and various other persons.

Act No. 519, General and Local Acts 1953, which became effective upon approval by the governor on September 3, 1953, and which appears as Sections 419(2) and 419 (3) of Tit. 14 Cumulative Pocket Part Code 1940, provides:

"Section 2. It shall be unlawful for any person or persons, to display, exhibit, handle or use any poisonous or dangerous snake or reptile in such a manner as to endanger the life or health of any person.

"Section 3. Any person violating the provisions of this Act shall be guilty of a misdemeanor and punished by a fine of not less than fifty ($50.00) dollars nor more than one hundred and fifty ($150.00) dollars, or by confinement in jail not exceeding six months, or by both such fine and imprisonment, in the discretion of the court."

Defendant pleaded not guilty and went to trial without questioning the sufficiency of the complaint by demurrer or otherwise. His motion to exclude the evidence and discharge the defendant, made at the conclusion of the State's evidence in chief, on the ground the complaint was not sufficient to sustain a judgment of conviction was overruled.

Appellants insists in brief that if the act complained of was committed prior to September 3, 1953, although within the twelve-month period, it would not be a violation of Act No. 519.

It is specifically provided in section 1 of Act No. 519, supra, that said act supersedes Act No. 45, General and Local Acts 1950, which became effective on October 31, 1950. Act No. 45 is as follows:

"Section 1. Any person who displays, handles, exhibits, or uses any poisonous or dangerous snake or reptile in such a manner as to endanger the life or health of another shall be guilty of a felony, and upon conviction shall be imprisoned for a term to be fixed by the court of not less than one, nor more than five years."

Until the enactment of Act 519 the offense charged was a felony and subsequent to the approval of said act on September 3, 1953, it was a misdemeanor, so that in

the twelve-month period covered by the affidavit the acts complained of were under the statute both a felony and a misdemeanor, and appellant contends that time was a material ingredient of the offense and the affidavit was void for uncertainty in failing to state the time of the commission of the alleged offense.

In Holt v. State, 238 Ala. 219, 193 So. 101, the court cited numerous authorities to the effect that where an indictment covers a period when the offense charged was and was not a violation of the law it was defective upon appropriate demurrer for a failure to aver the time of the commission of the alleged offense.

In Shiflett v. State, 37 Ala.App. 300, 67 So.2d 284, 285, Judge Harwood, writing for this court, stated: "Where, however, an indictment is for a new offense, or when the grade of an offense has been raised from a misdemeanor to a felony, and covers a period both when the act was and was not an offense, or where it was of a lesser grade, it is defective upon appropriate demurrer if it fails to aver the time of the commission of the alleged offense. Bibb v. State, 83 Ala. 84, 3 So. 711; Howard v. State, 17 Ala.App. 464, 86 So. 172; Holt v. State, 238 Ala. 219, 193 So. 101. This for the reason that under such circumstances time is a material ingredient of the offense."

·In urging that the defendant was entitled to his motion to exclude the evidence and for his discharge because the complaint was not sufficient to support a conviction, counsel relies upon the case of McMullen v. State, 17 Ala.App. 504, 86 So. 175, and also cites Laminack v. State, 18 Ala.App. 399, 92 So. 502 and Farrister v. State, 18 Ala.App. 390, 92 So. 504, as authority for his contention that defendant was entitled to the general affirmative charge upon the same theory.

As was said by Presiding Judge Bricken in Cusimano v. State, 33 Ala.App. 62, 31 So.2d 139, 140, "In connection with the foregoing insistence, and in support thereof, several cases from this court are cited as authority which in some respects sustain portions of counsel's argument, but the sole question involved here has been definitely decided by our Supreme Court and is consequently conclusive of this appeal." He then quoted from the opinion in Ex parte State ex rel. Attorney General (Coker v. State), 207 Ala. 656, 93 So. 383, 384, where the Supreme Court in reversing this court said, among other things, " 'We cannot agree, however, that count 2 of the indictment charges no offense that would support a conviction. It is true that it is a new offense, and covers a period both when the thing charged was and was not a violation of the law, and was defective upon appropriate demurrer for a failure to aver the time of the commission of the alleged offense. * * *

"It is also true that on demurrer indictments should be construed most strongly against the pleader, and without inferences in favor of same; but the rule is different in the absence of a demurrer, and when they are challenged by a charge upon the theory that they will not support a conviction. If count 2 charged the time of having a still at a time when the same was not prohibited by law, it would not state an offense; but, as it is, it charges an offense punishable by law during a part of the time covered thereby, and is merely defective and uncertain and subject to an appropriate demurrer. * * *' "

We conclude therefore that although the affidavit in this case may have been uncertain and subject to appropriate demurrer it was not void and defendant's insistence cannot be sustained.

We quote from the Attorney General's brief which states fairly the salient facts adduced upon the trial:

"The defendant-appellant, Hill, and the prosecuting witness, Turner, are both members of a religious sect known as the Congregational Holiness Church; however, the defendant belongs to one branch of this church and the prosecuting witness is a minister of another. One of the differences between the two groups is that the de-

fendant's group believes in the handling of poisonous snakes as a test of faith, while the other group does not.

"On May 19, 1954, a meeting of the snake-handling group, of which defendant was a member, was held at the home of one Charlie Hall, located in Fort Payne, DeKalb County, Alabama. Hall opened the services with songs and prayer. Turner, the complaining witness, and his wife had been invited to attend the services and, along with other members of the congregation, sat on benches in the meeting-room and participated in the services.

"After the meeting had been in progress for some time, the defendant, Hill, entered the room carrying a box in which there was a fairly large rattlesnake. Hall then stated that the 'believers' were to come to the front of the room, where the pulpit was located and where the snake was to be released and handled. The non-believers were to remain behind the first row of benches. (Mr. and Mrs. Turner were sitting on the third row.) Supposedly the snake would not be permitted near the benches and persons sitting on them would be 'safe.'

"The 'test of faith' then began, with all 'believers' who so desired taking the snake in their hands and passing it around among them. One man even put the snake around his neck. There is some conflict in the testimony as to whether or not the snake was ever allowed loose on the floor. The snake was, however, a poisonous rattlesnake and its fangs had not been removed. The Turners were approximately fifteen feet from the snake."

Defendant, as a witness in his own behalf, admitted that he handled the snake and that the snake was dangerous.

Appellant's main contention is that the statute penalizing the practice of snake handling is unconstitutional in that it is violative of the freedom of religion guaranteed by Art. 1, § 3 of the State Constitution.

The source of the Federal protection of the individual's religious freedom and the limitation upon his right to act in exercising such freedom is pointed out in the opinion of the Supreme Court of the United States in Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 128 A.L.R. 1352, as follows:

"The fundamental concept of liberty embodied in that Amendment [Fourteenth] embraces the liberties guaranteed by the First Amendment. The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws. The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection."

In Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 300, 33 L.Ed. 637, the court, in discussing the constitutional guarantees with reference to religion, said: "It was never intended or supposed that the amendment could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order, and morals of society."

In Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244, the court stated:

"Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice?"

In the case of Lawson v. Commonwealth, 291 Ky. 437, 164 S.W.2d 972, 976, the Kentucky Court of Appeals in considering a statute similar to ours (except the Kentucky statute does not limit the prohibition of snake handling to those snakes which are poisonous or dangerous and specifically confines its application to "any religious service or gathering"), held that the statute was not violative of either the Federal or the State Constitution. The Kentucky Constitution provided that "the civil rights, * * * of no person shall be taken away, or in anywise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience." Const.Ky. § 5.

In Harden v. State, 188 Tenn. 17, 216 S.W.2d 708, 710, the Supreme Court of Tennessee held that a statute identical with the Alabama statute did not offend either the Federal or Tennessee Constitution, the latter providing, in so far as is pertinent to the question, that: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; * * * no human authority can, in any case whatever, control or interfere with the rights of conscience". Const.Tenn. art. 1, § 3. The court stated that the statute "does not attempt to prevent any one from believing that the handling of these poisonous snakes in the manner mentioned is 'a necessary part of religious worship.' That statute does by necessary inference declare that such handling of poisonous snakes is dangerous to the life and health of people. Accordingly, it forbids that practice." And that its purpose was "to better protect the life and health of all people from exposure to the stated danger."

The language of Section 3, Art. 1, Alabama Constitution of 1901, in so far as is here pertinent, is:

"That no religion shall be established by law; that no preference shall be given by law to any religious sect, society, denomination, or mode of worship; that no one shall be compelled by law to attend any place of worship; * * * that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles."

The question of the constitutionality of Act No. 519 has not been before our courts for decision, but the meaning of the provisions of the foregoing section of the Constitution has been discussed in several decisions.

In the case of Desribes v. Wilmer, 69 Ala. 25, the court said: "All religions, save such as shock the public morals, or offend our statutes, are alike tolerated and protected by the broad philanthropy of our republican policy."

In Frolickstein v. Mayor of Mobile, 40 Ala. 725, the defendant, a member of the Jewish faith, was convicted for a violation of a city ordinance prohibiting the sale of goods by merchants on Sunday. Defendant contended that it was his religious duty to observe the Sabbath on Saturday and to work the other six days and that he was restrained in his religious sentiments or persuasions. The court in holding that the ordinance did not offend the provisions of Section 3 of the Constitution of 1865, "that no person within the State shall, upon any pretense whatever, * * * be hurt, molested, or restrained, in his religious profession, sentiments, or persuasions, provided he does not disturb others in their religious worship," said: "The law does not hurt, molest, or restrain the appellant, in the entertainment or expression of what he regards as a religious sentiment or persuasion. It simply prohibits the performance of an act, which he supposes to be required

by a religious duty. It can not be that the Constitution designed to exclude from the prohibitory power of legislation every act, which a sentiment or persuasion, regarded by any one as of a religious character, may dictate. Such a doctrine would lead to the constrained toleration of crime, equally abhorrent to the Jew and the Christian. Acts must at least be the fruit of sentiment or persuasion in fact religious, in order that an immunity from legislative prohibition may be claimed. It would be subversive of good government to subordinate the power of restraining acts prejudicial to the public welfare, and productive of social injury, to the convictions of each individual as to the acts which religious sentiment may demand."

In 16 C.J.S., Constitutional Law, § 206(b), pp. 601, 602, it is said:

"Laws enacted for the purpose of restraining and punishing acts which have a tendency to disturb the public peace or to corrupt the public morals are not repugnant to the constitutional guaranties of religious liberty and freedom of conscience, although such acts may have been done pursuant to, and in conformity with, what was believed at the time to be a religious duty. Without violating the constitutional guaranties, the state, under the police power, may enact laws in order to promote the general welfare, public health, public safety and order, public morals, and to prevent fraud."

We are of the opinion that said Act No. 519, Sections 419(2) and 419(3) Title 14, Code 1940, does not violate either the federal or state constitutional guarantees of freedom of religion.

The question as to whether the handling of the snake endangered Mina Ruth Turner and all the other persons in the room was for the jury under the evidence and there is no merit in appellant's insistence that he was entitled to the affirmative charge because the evidence failed to specifically show any danger to Mrs. Turner.

Requested charges 1, 4 and 10 do not assert correct propositions of law and were properly refused. It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantive offense specified therein. Porter v. State, 58 Ala. 66; Blakeney v. State, 244 Ala. 262, 13 So.2d 430; Tanner v. State, 37 Ala.App. 256, 66 So.2d 827, certiorari granted on another question, 259 Ala. 306, 66 So.2d 836.

The violation of the statute is complete if the life or health of one person is endangered and the fact that the affidavit sets out that the offense was committed with reference to Mina Ruth Turner and various other persons does not make it necessary for the State to prove that "both Mrs. Turner and various other people were endangered in their lives and health." 42 C.J.S., Indictments and Informations, § 265, p. 1288; Bennett v. United States, 6 Cir., 194 F. 630, 114 C.C.A. 402, affirmed 227 U.S. 333, 33 S.Ct. 288, 57 L.Ed. 531.

Appellant also urges reversible error for the refusal of requested charge 1, because said charge instructs the jury that before they would be authorized in convicting the defendant they must believe that the use of the snake at the time complained of endangered the "life and health" of Mrs. Turner and others. It is insisted that charge 1 follows the complaint in this respect and it is not covered by defendant's given charge 7 which uses the phrase "life or health, as set out in the statute. This contention is without merit.

"When several acts specified in a statute are committed by the same person, they may be coupled in one count as together constituting one offense although a disjunctive word is used in the statute, and proof of any one of the acts joined in the conjunctive is sufficient to support a verdict of guilty. So where as here, the indictment charged that the defendant did unlawfully remove, deposit and conceal, it was enough to prove any one." Price v. United States, 5 Cir., 150 F.2d 283, 285, certiorari denied 326 U.S. 789, 66 S.Ct.

473, 90 L.Ed. 479, rehearing denied 327 U.S. 813, 66 S.Ct. 519, 90 L.Ed. 1038. See also Sanford v. State, 8 Ala.App. 245, 62 So. 317.

What we have said here applies also to refused charge 9.

■ Charges 5, 6, 8, 11, are argumentative, not hypothesized on a belief from the evidence, mere abstract propositions without instruction as to their effect upon or application to the issues in the case, and are otherwise faulty and their refusal was without error.

■ The evidence was ample to sustain the judgment of conviction and the court's action in overruling the motion for a new trial was without error.

The judgment is affirmed.

Affirmed.