[No. 32785-2-I.   Division One.   September 26, 1994.]

KOREAN PRESBYTERIAN CHURCH OF SEATTLE NORMALIZATION COMMITTEE, ET AL, *Respondents*, v. SUN YOUNG LEE, ET AL, *Petitioners*.

*Sylvia Luppert* and *Reaugh Fischnaller & Oettinger,* for petitioners.

*Thomas B. Russell* and *Hansen, Robinett & Purcell, P.S.,* for respondents.

KENNEDY, J. — Five members of The Ministerial Relations Committee of the Northwest Presbytery of the Korean Presbyterian Church in America (Petitioners) sought discretionary review in this court of the trial court's order on summary judgment allowing 11 members of the Korean Presbyterian Church of Seattle Normalization Committee (Respondents) to proceed with their claims against Petitioners for the tort

of outrage for announcing to the congregation from the pulpit the excommunications of the 11.

We granted discretionary review and now reverse and remand for dismissal of the tort claims. The Respondents' effort to show actual malice by proving that Petitioners intentionally violated church constitutional due process in excommunicating them fails, not only because they have withdrawn their cross appeal of the trial court's dismissal of their claims for declaratory and injunctive relief and for damages for wrongful excommunication, but also because proving actual malice by showing a failure to comply with the procedures of a hierarchical church is precluded by the ecclesiastical abstention doctrine. Moreover, Respondents have failed to show that the announcement of their excommunications impacts on a compelling state interest.

### FACTS

This dispute revolves around the Korean Presbyterian Church of Seattle, located in Mountlake Terrace. The bylaws of the Korean Presbyterian Church of Seattle incorporate provisions of the constitution of the Korean Presbyterian Church in America, and state, "the Church belongs to the Korean Presbyterian Church in America and will follow the regulations (regarding policy, disciplinary action, sermons, and religious confession)". Clerk's Papers, at 240. In addition, one of the bylaws states:

> The principles governing this church are based on the Constitution of the Korean Presbyterian Church in America. In the event of an unclear translation or miscellaneous article in the Seattle Korean Presbyterian Church Orthodoxy then the articles of the Korean Presbyterian Church in America will be applied.

Clerk's Papers, at 249.

The Korean Presbyterian Church in America is a hierarchical church organized in the presbyterian form. The highest governing body is the general assembly, the intermediate body is a regional presbytery and the local body is a session. Each level of governance is led by an individual called a moderator.

In 1991, a division arose among members of the Korean Presbyterian Church of Seattle. The Petitioners and Respondents dispute the nature and cause of the division. Pastor Lee asked the Northwest Presbytery of the Korean Presbyterian Church in America to intervene in the controversy. The Northwest Presbytery responded by forming a Plenipotentiary Commission (the Commission) to investigate and resolve the situation. After an investigation, the Commission asked the session of the Korean Presbyterian Church of Seattle to resign, created a temporary session and asked Pastor Lee to continue as pastor. After hostilities escalated,[1] the Commission decided that 13 of the most disruptive protestors would be excommunicated, the most severe punishment possible under church law.

The constitution of the Korean Presbyterian Church in America requires that excommunications be announced to the congregation:

> When excommunication is decided, a moderator of a session shall announce officially, before the congregation, all the detailed investigation of the offender, and explain the reason why the church cannot keep the offender in the church. Then, on the basis of Matt. 18: 15-18 and I Corinthians 5:1-5 the moderator shows that the church has the power to expel unrighteous persons, and he explains the nature, usefulness, and the results of this punishment, teaches with warning the congregation how to deal with a person under this serious punishment, and declares as follows:

> "Since there is enough evidence that a church member, XXX (the member's name), committed YYY crime (the title of the crime), the church has expostulated him several times but he has been so stubborn that he has not listened to the church's expostulation, and has never shown any sign of repentance. Therefore in the name of Jesus Christ and by His Authority, the session declares that this person is forbidden to have Holy Communion and also forbidden to associate with any other church members."

---

[1] According to Petitioners, Respondents and others distributed pamphlets, picketed and placed signs around the church. They also confronted families as they entered for services. During the services, they talked loudly and made other noises to disrupt the sermon.

This declaration shall be followed by a prayer to God for making the excommunicated person realize and repent his sin and for making this punishment be useful for cultivating goodness among faithful believers.

Clerk's Papers, at 10. The Respondents' excommunication was announced and explained to the congregation.

The general assembly subsequently investigated the actions of the Commission. The moderator of the general assembly stated in his declaration that all of the actions taken by the Commission were consistent with the Korean Presbyterian Church in America constitution and had the endorsement of the general assembly.

The Respondents and other former members of the Seattle church then formed the Korean Presbyterian Church of Seattle Normalization Committee to bring suit against the Petitioners. Respondents sought declaratory and injunctive relief as well as damages for the tort of outrage. The Respondents' complaint alleged: (1) that their excommunication was in violation of the articles of incorporation and the bylaws of the Korean Presbyterian Church of Seattle because neither the Northwest Presbytery nor Pastor Lee had any authority over the Korean Presbyterian Church of Seattle; and (2) that Petitioners violated the Respondents' due process rights under the church constitution by failing to give notice or a hearing before deciding to excommunicate them.

Finding that the Korean Presbyterian Church of Seattle was a member of the Korean Presbyterian Church in America, and that the Korean Presbyterian Church in America was a hierarchical church, the trial judge granted summary judgment against the Respondents as related to the injunctive and declaratory relief sought.[2] The trial judge did not dismiss the tort claims.

Petitioners moved for reconsideration. The trial judge granted reconsideration and dismissed the Respondents' tort claims arising from the decision to excommunicate the

---

[2]The trial judge relied on the ecclesiastical abstention doctrine; *i.e.*, that a civil court cannot review decisions of an ecclesiastical nature made pursuant to a hierarchical church's laws. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709-10, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976).

Respondents. He did not dismiss the tort claims inasmuch as they related to the announcement of the excommunication to the congregation.

Petitioners sought discretionary review of the summary judgment, arguing that the ecclesiastical abstention doctrine should prevent review of the decision to announce the excommunication. This court granted discretionary review.

## DISCUSSION

Petitioners were granted discretionary review of a summary judgment. The ordinary standard of review for summary judgments applies. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

The first question presented by this appeal is whether the Petitioners' conduct of announcing the Respondents' excommunication to the congregation is privileged, making it immune from a challenge in tort as outrageous conduct.[3]

■ The First Amendment to the United States Constitution, applicable to the states as incorporated through the Fourteenth Amendment, guarantees freedom of religion: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"[4] "The First Amendment absolutely protects the freedom to believe, but conduct, even when religiously motivated, is not totally free of government regulation." *First Covenant Church v. Seattle*, 120 Wn.2d 203, 218, 840 P.2d 174 (1992) (citing *Sherbert v. Verner*, 374 U.S. 398, 402, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963)). Conduct is not absolutely immunized from regulation because actions undertaken for presumably religious purposes can nonetheless have a negative impact on

---

[3]Respondents assert that Petitioners did not raise privilege as a defense below. We disagree. The Petitioners' answer clearly states as an affirmative defense that the conduct was privileged. The Respondents' own response to Defendants' motion for summary judgment states: "Defendant's motion goes only to whether the court is precluded from hearing the injunction/declaratory judgment claim and whether the alleged tort in the second cause of action is absolutely privileged." Clerk's Papers, at 284-85.

[4]Our decision rests solely on federal grounds and does not hinge upon whether the Washington Constitution is more protective of religious freedom than is the United States Constitution.

the public interest in peace, safety and order. *See Cantwell v. Connecticut*, 310 U.S. 296, 303, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940); *Sherbert*, 374 U.S. at 402-03.

Thus, individuals have a qualified privilege to engage in conduct for religious purposes. *See Paul v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 819 F.2d 875, 879 (9th Cir.) (citing *Carrieri v. Bush*, 69 Wn.2d 536, 545, 419 P.2d 132 (1966)), *cert. denied*, 484 U.S. 926 (1987). Conduct does not qualify for immunity based upon the privilege if the conduct at issue is not religiously motivated, *see Wisconsin v. Yoder*, 406 U.S. 205, 215, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("to have the protection of the Religion Clauses, the [activity] must be rooted in religious belief"), or if it impacts the health, safety and order of society such that the state's interest in regulating the conduct outweighs the religious freedom of the individual. *See Snyder v. Evangelical Orthodox Church*, 216 Cal. App. 3d 297, 264 Cal. Rptr. 640 (1989) (citing *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1112-13, 762 P.2d 46, 252 Cal. Rptr. 122, 132-33 (1988), *cert. denied*, 490 U.S. 1084 (1989)).

■ Where a plaintiff can establish that the defendant acted with actual malice, such malice negates any claim that the action was undertaken for religious purposes. *See Paul*, 819 F.2d at 883 n.7 ("Paul has not presented evidence of actual malice sufficient to overcome the constitutional privilege . . . [;] . . . she has neither alleged nor shown that members of the Church hierarchy were motivated by reasons unrelated to their interpretation of the dictates of their religion").

The Respondents' contention is that the Petitioners acted with an improper state of mind in excommunicating them.[5]

---

[5]Respondents also argue that a genuine issue of material fact remains as to whether the Korean Presbyterian Church of Seattle was a member of the Korean Presbyterian Church in America. The trial court's order on summary judgment stated:

The Court has concluded as a matter of law that the Korean Presbyterian Church in America is a hierarchical church, and that the Korean Presbyterian Church in Seattle's membership in such hierarchical church is such that it is obligated to follow all the provisions of the Constitution of Korean Pres-

We understand this contention to allege actual malice as that term was used by the court in *Paul*, 819 F.2d at 883.

We have very little guidance from the court in *Paul* as to what constitutes actual malice. The only Washington case on point suggests that the plaintiff is required to show ill will or hostility. *See Carrieri*, 69 Wn.2d at 545 ("Ill will, intimidation, threats, . . . where found to exist, nullify the privilege and project liability"); *see also* Lee W. Brooks, Note, *Intentional Infliction of Emotional Distress by Spiritual Counselors: Can Outrageous Conduct Be "Free Exercise"?*, 84 Mich. L. Rev. 1296, 1321 n.102 (1986).[6]

■ We decline to examine the issue of what constitutes actual malice, as the Respondents in the instant case have not alleged any actual malice involving only the announcement of their excommunications. The Respondents expect to prove the existence of actual malice by showing that the church failed to act in accordance with its own laws and procedures.[7] Read carefully, the Respondents' claim is not that the church leaders improperly *announced* the excommunications. Rather, Respondents are attempting to prove

---

byterian Church in America, and that this court must accept as conclusive decisions of an ecclesiastical nature made pursuant to the church's constitution.

Clerk's Papers, at 27. This conclusion on summary judgment was not appealed by the Respondents. Respondents did file a notice of cross review, but this notice was withdrawn. We will not grant the Respondents any affirmative relief from the summary judgment ruling due to their failure to perfect an appeal. RAP 2.4(a).

[6]Other courts suggest that no intentional torts should enjoy religious protection. *See Hester v. Barnett*, 723 S.W.2d 544, 552 (Mo. Ct. App. 1987) ("The *intentional* torts of a cleric are already actionable, however, even though incidents of religious practice and belief"); *Turner v. Unification Church*, 473 F. Supp. 367, 371 (D.R.I. 1978) ("the free exercise clause of the first amendment does not immunize the defendants from causes of action that allege . . . intentional tortious activity").

[7]The Respondents' brief contains the following phrases: "[r]ather than leaving, defendant Lee started a series of actions in violation of the articles and bylaws"; "none of the Korean Presbyterian Church of America constitutional provisions affording due process to the persons charged with such serious offenses had been followed"; Respondents sought "injunctive relief from defendant Lee and others' continued unauthorized actions[.]" Br. of Resp'ts, at 1-4.

that the church leaders wrongfully excommunicated them. However, because individuals have absolute freedom of religious belief, civil courts abstain from deciding whether a hierarchical religious body has abided by its own religious principles when acting in a particular case:

> [W]henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final[.]

*Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976) (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727, 20 L. Ed. 666 (1871)); *Presbytery of Seattle, Inc. v. Rohrbaugh*, 79 Wn.2d 367, 373, 485 P.2d 615 (1971), *cert. denied*, 405 U.S. 996 (1972). "[Q]uestions of church discipline and the composition of the church hierarchy are at the core of ecclesiastical concern[.]", *Serbian Eastern Orthodox Diocese*, 426 U.S. at 717; *see also Guinn v. Church*, 775 P.2d 766 (Okla. 1989). Whatever the definition of actual malice is, it cannot entail an analysis of whether a hierarchical church violated its own laws and procedures; such an analysis is otherwise prohibited by the ecclesiastical abstention doctrine. *See Serbian Eastern Orthodox Diocese*, 426 U.S. at 718 (civil court could not reach defrocked bishop's contention that defrocking was not conducted in accord with church constitution, as such is impermissible under First and Fourteenth Amendments); *cf. Murphy v. I.S.K.Con. of New England, Inc.*, 409 Mass. 842, 851-54, 571 N.E.2d 340, 346-47 (1991) (where proof of outrage tort requires reading the Krishna scriptures to show harm to plaintiff from their teachings, the conduct of teaching is inseparable from the holding of the Krishna beliefs and is absolutely privileged).

Absent a showing of actual malice on the part of the Petitioners, there can be no genuine issue of material fact as to the religious motivation behind Petitioners' announcement of Respondents' excommunication. Given the decision to excommunicate, an official announcement before the congre-

gation was mandated by the constitution of the Korean Presbyterian Church in America. See constitution quoted, *supra*, and in Clerk's Papers, at 10.

██ Having concluded that the Respondents have not raised a genuine issue of material fact as to whether the Petitioners' conduct in announcing their excommunications was religiously motivated, we next examine whether the conduct poses "some substantial threat to public safety, peace or order". *Sherbert*, 374 U.S. at 403.[8] The *Sherbert* court added, " '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation". *Sherbert*, 374 U.S. at 406 (quoting *Thomas v. Collins*, 323 U.S. 516, 530, 89 L. Ed. 430, 65 S. Ct. 315 (1945)). Based on this standard, courts have eliminated or limited the practice of certain religious conduct. *See, e.g., Reynolds v. United States*, 98 U.S. 145, 25 L. Ed. 244 (1878) (polygamy); *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 49 L. Ed. 643, 25 S. Ct. 358 (1905) (upholding mandatory vaccinations); *Hill v. State*, 38 Ala. App. 404, 88 So. 2d 880 (snake handling), *cert. denied*, 264 Ala. 697 (1956); *but see Bear v. Reformed Mennonite Church*, 462 Pa. 330, 334-35, 341 A.2d 105, 107-08 (1975) (not dismissing case because "shunning" might cause excessive interference with marital and familial relations and operation of business).

The Respondents have not alleged in their pleadings below, in their brief, or at oral argument for this appeal, that the announcement of their excommunications impacts upon a compelling state interest in safety, peace or order. We therefore conclude that no such public interest exists in this case.

On this record, we must conclude that Petitioners' conduct was undertaken for religious purposes that did not interfere with public safety, health or order. Such conduct is privileged under the First Amendment. Respondents' effort to raise genuine issues of material fact as to religious moti-

---

[8]The conduct at issue in this case involves speech, so is a "hybrid" case of freedom of speech and religion, requiring that the State's interest be a "compelling" one. *See First Covenant*, 120 Wn.2d at 212.

vation fails by virtue of the ecclesiastical abstention doctrine.

Reversed and remanded for dismissal of the Respondents' remaining tort claims.

WEBSTER, C.J., and PEKELIS, J., concur.