[Nos. 17332-1-III; 17333-0-III;   Division Three.   July 27, 1999.]
17334-8-III.

BONNIE GERMAIN, *Appellant*, v. PULLMAN BAPTIST CHURCH,
ET AL., *Respondents*.

SHARON STROHM, *Appellant*, v. PULLMAN BAPTIST CHURCH,
ET AL., *Respondents*.

DONNA GRANHOLM, *Appellant*, v. PULLMAN BAPTIST
CHURCH, ET AL., *Respondents*.

*Thomas M. Smith* and *David A. Summers*, for appellants.

*John C. Riseborough* of *Paine, Hamblen, Coffin, Brooke & Miller*; and *Ronald G. Morrison* and *Patrick T. Tinsley* of *Morrison & Associates P.C.*, for respondents.

SCHULTHEIS, C.J. — Does the discovery rule apply to toll the statute of limitation in actions for negligent pastoral counseling and breach of fiduciary duty, when the plaintiffs allegedly did not know that the cause of their psychological injuries was the improper sexual conduct their pastor engaged them in during the course of counseling? The superior court held the discovery rule does not apply in those circumstances, and it summarily dismissed the plaintiffs' lawsuits against their pastor. It also dismissed the plaintiffs' actions against their church for negligent supervision of the pastor. The court ruled that it could not decide the plaintiffs' claims against the church without violating the First Amendment's prohibition against excessive entanglement by the State with religion. We affirm.

On March 18, 1996, Bonnie Germain, Sharon (Hoover)

Strohm, and Donna Granholm filed separate actions for damages against Pullman Baptist Church and David Leach, the Church's former pastor. All three of the women were members of the Church and had received counseling from Pastor Leach in the 1980s. Their lawsuits alleged he was negligent in his pastoral counseling and had breached the fiduciary duty he owed them to act only in their best interests. Specifically, they alleged he involved them in improper sexual conduct with him. The plaintiffs named the Church as an additional defendant on a separate cause of action for negligent supervision. According to the plaintiffs, members of the Church board of deacons were aware, or should have been aware, of Pastor Leach's improprieties, but did nothing to protect them.

Pastor Leach and the Church filed motions for summary judgment on two grounds: (1) the plaintiffs commenced their actions after the statute of limitation expired; and (2) the plaintiffs failed to state claims on which relief could be granted. As to the second ground, they relied upon cases from other jurisdictions that refused to recognize claims for negligent pastoral counseling and negligent supervision. Those courts reasoned that adjudicating such claims violates the First Amendment.

The plaintiffs countered that the discovery rule extended the statute of limitation in their cases. They asserted they had not recognized that Pastor Leach's conduct was wrong until 1993, when others advised them that sexual activity between a counselor and a person in counseling is never appropriate and almost always injurious to the latter. Until that time, they did not know that their low self-esteem and inability to trust men or enter into relationships were the direct results of Pastor Leach's conduct. As for their claims against the Church, the plaintiffs argued that members of the Church's board concealed their knowledge of misconduct by Pastor Leach and thereby tolled the statute of limitation. They also contended adjudication of their claims did not violate the First Amendment because a court could decide them without interpreting church doctrine or practices.

The court granted the defendants' motions for summary judgment. With respect to the plaintiffs' actions against Pastor Leach, the court noted that the parties did not dispute that all three women ended their sexual conduct with him in 1987, and that counseling ceased no later than 1990. Also, the parties did not dispute that the plaintiffs knew the sexual conduct was wrong and had caused the plaintiffs some emotional harm, as illustrated by the fact they told no one of the conduct because they wanted to avoid public scrutiny. The court observed that the test for determining when the statute of limitation begins to run is when a plaintiff knows or should know, in the exercise of due diligence, the *facts* that give rise to the cause of action. The test does not require that a plaintiff recognize a breach of a legal duty or the existence of a legal cause of action. The court concluded that the plaintiffs did not have to be aware that Pastor Leach's sexual conduct with them violated a counselor's or fiduciary's legal standard of care for the limitation period to commence.

The court also concluded that the plaintiffs' actions against the Church for negligent supervision were time-barred. It rejected the plaintiffs' arguments that the statute of limitation was tolled by the fact that some members of the board of deacons had information about Pastor Leach's predatory behavior and concealed it. The court relied on the fact the Church's congregation, not its board, is responsible for hiring and firing the Church pastor. It held that because the plaintiffs were all members of that congregation, they had constructive knowledge of the facts.

Finally, the court concluded that the plaintiffs' complaints against Pastor Leach and the Church failed to state claims upon which relief could be granted. The court held that for the judiciary to fashion a standard of care for a pastor's work, or to determine whether a church was responsible for supervising a member of its clergy, would excessively entangle it with religion and violate the First Amendment.

1. Statute of Limitation. Did the plaintiffs commence their lawsuits against Pastor Leach within three years of

the date they discovered they had a cause of action against him for negligent pastoral counseling and/or breach of fiduciary duty?

In opposition to Pastor Leach's motion for summary judgment on statute of limitation grounds, the plaintiffs filed the following declarations:

1. Ms. Germain stated that Pastor Leach told her that the sexual part of their relationship was "just one more way to help [her] experience and know what 'ultimate love' really was, which in turn would help [her] lead a happier, more fulfilling life." She "felt honored that a man of God who was so respected in the community had chosen [her]." Ms. Germain "did not know that what [Pastor] Leach was doing with [her] was something that pastors absolutely should not do with people who come to them for counseling." She dated her knowledge that he had breached a duty to her and had caused her psychological injury from a May 1993 church meeting called after others had come forward with similar accounts of their experiences with Pastor Leach.

2. Ms. Granholm stated Pastor Leach had advised her to "overcome what he called [her] 'good girl' problem." She felt ashamed of her sexual relationship with Pastor Leach, but blamed herself. She did not realize that Pastor Leach had breached his professional duties to her until 1993, at a meeting with other women who had been sexually involved with him.

3. Ms. Strohm stated that she, too, felt guilty and ashamed about the sexual relationship she had with Pastor Leach. He told her that "[i]t was through sinning . . . that we could experience the grace of God." In 1993, she first learned that Pastor Leach's conduct had harmed her by contributing to her poor self-concept, anxiety, nightmares and an eating disorder.

The women also submitted the declaration of Laura Brown. Ms. Brown is a licensed psychologist. She stated that none of the plaintiffs understood that Pastor Leach had an "absolute duty not to make sexual contact with

[them.]" Nor did they recognize the harm he caused them. That harm included diminished self-esteem, diminished trust for men and a diminished ability to enter into relationships, loss of trust in their own judgment, and anxiety and depression when they discovered they had been duped. Ms. Brown was of the opinion that the women's feelings of hurt and anger at the time were not the same as knowing they had suffered psychological injury. Pastor Leach moved the court to strike the affidavit. The court granted the motion, stating that Ms. Brown's affidavit was irrelevant because she was not qualified to evaluate *pastoral* counseling.

Pastor Leach relied upon the deposition testimony of each of the plaintiffs that at or near the time of the sexual conduct they were aware it was wrong and had caused them some harm.

1.  Ms. Germain was 29 years old when Pastor Leach first engaged her in sexual conduct. She stated she was aware in 1987 that the adulterous relationship could have adverse consequences on Pastor Leach and his family, as well as her own. She kept information about the affair from her second husband. Ms. Germain said going to Pastor Leach's house made her feel like "slime" and that his sexual advances made her feel helpless and worthless.

2.  Ms. Granholm was 42 years old and had a master's degree in education at the time she had sexual contact with Pastor Leach. She knew the conduct was inappropriate and threatened the stability of both her and Pastor Leach's marriages. She knew that disclosure of the sexual relationship would harm her reputation.

3.  Ms. Strohm was 47 years old when the sexual conduct started. In 1990, a health care provider advised her that Pastor Leach's conduct was wrong. She feared that disclosure of the sexual relationship would harm her and her family. And, she recognized the moral implications of the conduct, and felt guilty and ashamed.

The plaintiffs countered that Pastor Leach took many of their comments out of context. Ms. Germain's statements

that she felt like "slime" and "helpless and worthless" referred to her emotions much later, after learning Pastor Leach had exploited her and other women. While a health care provider had advised Ms. Strohm that Pastor Leach had "abused" her, she had no idea what that meant until much later.

■■ RCW 4.16.080(2) imposes a three-year statute of limitation on actions for "injury to the person or rights of another[.]" The limitation period commences when the claim accrues. Under the discovery rule, a claim does not accrue until the claimant "discover[s] or reasonably should have discovered all of the essential elements of [the] possible cause of action[.]" *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 511, 598 P.2d 1358 (1979); *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). Knowledge of the factual, not the legal, basis of the action is the key consideration under the discovery rule. *Id.* "The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Id.*

We did not find a Washington case that addresses what facts a plaintiff must know before his or her claim accrues in an action for breach of a professional duty based upon a defendant's sexual misconduct. Other jurisdictions focus on whether the plaintiff knew that the conduct was wrong and, with the exercise of diligence, could have discovered the conduct was the cause of her psychological injury.

For example, in *A. McD. v. Rosen*, 423 Pa. Super. 304, 621 A.2d 128 (1993), the plaintiff argued her continuing psychiatric problems had prevented her from realizing the defendant had treated her improperly, and she did not learn of the impropriety until she discussed the treatment with her current psychologist. The court held she "was . . . in possession of the salient facts regarding her alleged mistreatment and the persons responsible therefor [when she withdrew from defendant's care]. . . . [S]he informed her friends of the sexual nature of Dr. Rosen's treatments

and was told, in return, that something '[is] wrong here.' " *Rosen*, 621 A.2d at 131-32. The court concluded she could have discerned at that time the other facts relevant to her cause of action, had she exercised reasonable diligence. *Id.* at 132. *See also Martinez-Sandoval v. Kirsch*, 118 N.M. 616, 884 P.2d 507 (Ct. App. 1994) (plaintiff knew the relationship was wrong and not socially acceptable by the time she terminated it; the accrual of her cause of action could not be delayed on the ground she still might not have appreciated, in some additional sense, that defendant's conduct was wrongful), *cert. denied*, 515 U.S. 1124 (1995).

In *Lovelace v. Keohane*, 831 P.2d 624, 11 A.L.R.5TH 1061 (Okla. 1992), the plaintiff alleged she had been seduced by a priest during counseling. She repressed the memory of the abuse for many years, but recovered it during psychotherapy sessions in 1987. The court noted the plaintiff admitted she was aware that her mental functioning was disturbed, but she did not seek psychological treatment in the years preceding her recovery of her repressed memory. The court concluded: "Lovelace may not have known what was in fact the cause of the harm, but she had an obligation and reasonable opportunity to discover with due diligence the actual cause and aggravation of the harm inflicted upon her." *Id.* at 631.

In *Clifton v. Bass*, 908 S.W.2d 205 (Tenn. Ct. App. 1995), the defendant told the plaintiff he "could lose his license" for what they were doing. When she informed a second therapist about the sexual relationship, he told her such conduct was inappropriate, and she had the "option" of filing a complaint with the licensing board. Plaintiff waited more than one year before she sued the first therapist. In resisting summary judgment on statute of limitation grounds, plaintiff relied upon her second therapist's opinion that she "remained incapable of understanding that what had happened to her was malpractice or that she had been injured as a result until some time between six and ten months following her January 4, 1991 disclosure to [him]." *Id.* at 208. The court nevertheless dismissed plaintiff's ac-

tion, citing *Roe v. Jefferson*, 875 S.W.2d 653 (Tenn. 1994). In *Roe*, the court held "[i]t is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action'; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Clifton*, 908 S.W.2d at 210 (quoting *Roe*, 875 S.W.2d at 657).

In *Weathers v. Fulgenzi*, 884 P.2d 538 (Okla. 1994), the plaintiff informed a second counselor of her sexual relationship with her first counselor three years after it ended. She also said that she did not want her husband to know about it. She did not file suit until another two years had elapsed. The court observed that under the discovery rule, the " 'acquisition of sufficient information which, if pursued, would lead to the true condition of things[, is] sufficient knowledge to start the running of the statute of limitations. . . . *This rule obtains because a reasonably prudent person is required to pursue his claim with diligence.*' " *Id.* at 541 (quoting *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 950-51 (Okla. 1984)). Hence, the court rejected the plaintiff's argument that she was unable to comprehend that she was injured by the first counselor's conduct until the second counselor "got through to her." *Weathers*, 884 P.2d at 542. Rather, the court held the deciding factor was that "the means of knowledge in the psychiatric field existed so as to reveal the symptoms of [the plaintiff's] mental disorder." *Id.* at 543 (quoting *Lovelace*, 831 P.2d at 631).

Here, the plaintiffs were all adults at the time of the alleged wrongful acts. It is undisputed that they considered the conduct to be wrong, at least in the sense that it had the potential of damaging their families and their own reputations if it became public knowledge. They also experienced psychological problems during and after the sexual misconduct, and they could have discovered the causal link between it and their injuries had they diligently sought treatment.

Plaintiffs' reliance on *Gillespie v. Seattle-First National Bank*, 70 Wn. App. 150, 855 P.2d 680 (1993), *review denied*, 123 Wn.2d 1012 (1994) is misplaced. There, the court held that trust beneficiaries were not required to seek independent advice as to whether an investment recommended for trust assets by the trustee bank was suitable. The beneficiaries were financially unsophisticated and had relied upon the bank's expertise for 30 years. *Gillespie* is clearly distinguishable from our case. In *Gillespie*, the beneficiaries acted reasonably in entrusting the wise management of their financial assets to the bank. Here, the plaintiffs were aware of the wrongfulness of the conduct at the time it occurred, and, in the exercise of reasonable diligence, could have discovered the causal connection between the misconduct and their psychological injury before the statute of limitation had expired.

In the circumstances present here, the trial court was correct in holding as a matter of law that the discovery rule did not extend the statute of limitation.[1]

2. First Amendment. Did plaintiffs' lawsuits against the Church violate the First Amendment? Should this court recognize a cause of action for a church's negligent supervision of a pastor?

Plaintiffs relied on the following evidence that individual members of the board of deacons knew about Pastor Leach's predatory conduct:

1.   Harriett Harrington testified in her deposition that she had engaged in sexual conduct with Pastor Leach during the course of counseling with him in 1969-72 about family problems. She subsequently served on the board of deacons but did not reveal the relationship.[2]

2.   Lloyd Slusser was a member of the board of deacons for

------

[1]We do not decide whether the trial court erred in holding the statute of limitation for negligent supervision had expired, because we affirm its dismissal of the Church on First Amendment grounds.

[2]At oral argument, the plaintiffs' lawyer withdrew his reliance on Ms. Harrington's failure to notify the congregation of Pastor Leach's misconduct. He recognized that Ms. Harrington was in the same position as plaintiffs with respect to Pastor Leach.

two consecutive terms of three years each in the mid-1980s. In addition, he was an advisor of the Church's college group during that same time. His wife, Donna, was also an advisor of the college group and on the board. It was his understanding from his wife that a young woman in the college group had complained to her that Pastor Leach had attempted to kiss and fondle her in the Church kitchen. He did not reveal this information to anyone else.

3. Donna Slusser confirmed the above described report. Mrs. Slusser also said she had some doubts as to the truthfulness of the young woman's accusations. The young woman had talked to her before about "fantasies" involving men. And, she did not say whether she was in counseling with Pastor Leach.

The Church countered that the board, even though it was responsible for managing the religious and financial affairs of the Church, had no authority to hire *or* to fire Pastor Leach, and, as a result, had no duty to supervise him. The constitution of the Church sets forth the structure of authority within the Church. The members of the Church's board of deacons are elected by the congregation and are "responsible for the management of both [its] spiritual and temporal affairs[.]" The congregation chooses the pastor at a meeting called by the board of deacons. The constitution also provides that the congregation, by a vote of at least 51 percent, may terminate the pastor.

In *Niece v. Elmview Group Home*, 131 Wn.2d 39, 929 P.2d 420 (1997), the Washington Supreme Court examined the tort theory of negligent supervision. The court noted that generally the law does not impose a duty on one person to prevent a third party from harming another person. However, a duty arises if " ' "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." ' " *Id.* at 43 (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227, 802 P.2d 1360 (1991) (quoting *Petersen v. State*, 100 Wn.2d 421, 426, 671 P.2d 230 (1983))).

The facts here do not require us to decide whether the

First Amendment forecloses *all* negligent supervision claims against churches based on the conduct of their ministers. In this case, the authority, as the pastor's employer, belongs to all of the Church's members, who must act by majority rule if they are to discharge him or otherwise control his conduct. The determination of whether to impose liability on a church where the authority is so diffused would require the court to consider and interpret the church's laws and constitution. To do so would violate the First Amendment by entangling the judiciary with religion.[3] *See L.L.N. v. Clauder,* 209 Wis. 2d 674, 563 N.W.2d 434, 441 (1997) (negligent supervision claims that demand an inquiry into the policies and practices of a defendant church in hiring and supervising clergy, involve the judiciary in making sensitive judgments about the propriety of the church's supervision in light of its religious beliefs); *see also Swanson v. Roman Catholic Bishop,* 692 A.2d 441 (Me. 1997).

We therefore affirm the trial court's dismissal of the claims against the Church.[4]

The plaintiffs also assign error to the superior court's ruling striking Dr. Brown's declaration. We first note Dr. Brown's declaration is immaterial to our statute of limitation analysis. She gave reasons why the plaintiffs did not discover the source and scope of their injuries until years later. But even if we consider Dr. Brown's affidavit, the key facts are undisputed. The plaintiffs knew the sexual conduct initiated by Pastor Leach was wrong and did not

[3]We have read and considered the two cases cited by the plaintiffs in their statement of additional authorities, filed May 18, 1999. *See First Covenant Church v. City of Seattle,* 120 Wn.2d 203, 218, 840 P.2d 174 (1992); *Korean Presbyterian Church of Seattle Normalization Comm. v. Lee,* 75 Wn. App. 833, 838-39, 880 P.2d 565 (1994). Neither of the cases helps the plaintiffs. Both cases affirmed judgments in favor of the churches on First Amendment grounds. *First Covenant* concerned whether Seattle's Landmarks Preservation Ordinance applied to the church. The issue in *Korean Church,* was whether the church committed the tort of outrage when it announced from the pulpit the excommunication of certain members.

[4]We do not decide whether the trial court erred in holding the plaintiffs' actions against Pastor Leach violated the First Amendment, because we have affirmed its dismissal of Pastor Leach on statute of limitation grounds.

want it to become known. And, they all experienced psychological problems after the misconduct. These facts were sufficient by themselves to lead a reasonable person to seek professional help and thereby identify the cause of the emotional problem.

In any event, a trial court's evidentiary rulings are upheld on appeal absent an abuse of discretion. *Sunbreaker Condominium Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 372, 901 P.2d 1079 (1995), *review denied*, 129 Wn.2d 1020 (1996). Here, the court struck Dr. Brown's declaration because she is not an expert in pastoral counseling. We cannot say that the court's distinction between pastoral and secular counseling is one no reasonable person would make. There was no abuse of discretion.

Finally, Pastor Leach moves the court to strike the plaintiffs' reply brief. He asserts it contains arguments not raised in superior court or in plaintiffs' opening brief. Again, we note these new arguments are irrelevant to the material facts we relied upon in holding the statute of limitation had expired. And, even if they were relevant, the plaintiffs' arguments are based upon facts in the record. We therefore deny Pastor Leach's motion to strike.

In summary, we affirm the court's dismissal of the plaintiffs' actions against Pastor Leach on the basis the statute of limitation had expired. We affirm the court's dismissal of the action against Pullman Baptist Church because its adjudication would excessively entangle the court with religion, in violation of the First Amendment.

SWEENEY and KATO, JJ., concur.

Review denied at 139 Wn.2d 1026 (2000).